**Daniel C. REINHART, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 57A03–1002–CR–84.

Court of Appeals of Indiana.

July 9, 2010.

Thomas C. Allen, Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Marjorie Lawyer–Smith, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Daniel C. Reinhart appeals his convictions for class D felony operating a vehicle while intoxicated and class A misdemeanor possession of marijuana. The sole issue presented for our review is whether the trial court abused its discretion when it admitted evidence obtained following the traffic stop of Reinhart's vehicle. Specifically, Reinhart asserts that the police violated his Fourth Amendment right to be free from unreasonable search and seizure. We agree and reverse Reinhart's convictions.

### Facts and Procedural History

On August 6, 2008, at approximately 2:50 a.m., Deputy Carey Coney of the Noble County Sheriff's Department was on patrol in his fully marked police cruiser. Deputy Coney was following behind a white jeep on U.S. Route 33 when it turned westbound on County Road 100 South. The jeep then turned into a driveway, and Deputy Coney drove past the driveway and pulled into another driveway down the road. The jeep then backed out of the driveway and continued westbound on 100 South. Deputy Coney again began to follow the jeep, and he observed the jeep swerve left of the center of the road and then turn into a different driveway. Deputy Coney drove past that driveway and pulled into the next driveway. Deputy

Coney positioned his cruiser about 250 feet up the driveway so that it was facing the street. Deputy Coney turned off his lights and turned on his radar gun. The jeep pulled out of the driveway in which it had stopped and proceeded westbound on 100 South. Deputy Coney's radar gun indicated that the jeep was traveling at an exceptionally slow rate of twenty-six miles per hour in a fifty-five mile per hour zone. The jeep then pulled into the same driveway where Deputy Coney was parked within ten feet of the police cruiser so that the two vehicles were facing each other. The driver of the jeep, Reinhart, began yelling out his window at Deputy Coney. Deputy Coney shined his spotlight at Reinhart's vehicle and noticed that there was also a male passenger in the car. At this point, concerned about the situation and his safety, Deputy Coney ordered Reinhart to back up his vehicle. Reinhart complied and pulled back out onto the county road.

Deputy Coney radioed for backup and followed Reinhart's vehicle, hoping to reach a better lit area. After Reinhart turned onto U.S. Route 33 South, Deputy Coney activated his emergency lights to initiate a traffic stop. Reinhart pulled his vehicle to the side of the road.

With his weapon drawn and standing quite a distance back from Reinhart's vehicle, Deputy Coney instructed Reinhart to turn off the motor and exit the vehicle. At gunpoint, Deputy Coney ordered Reinhart to walk to the back of the vehicle and to get on his knees with his hands on the back of his head, fingers interlaced. Reinhart stayed in that position for a short period of time. When the passenger of Reinhart's vehicle started to exit the vehicle, Deputy Coney instructed the passenger to stay in the vehicle, which he did. Deputy Coney then ordered Reinhart to lie flat on his stomach with his arms out to the side. Approximately one minute and one-half later, Sergeant Terry Waikel arrived on the scene and handcuffed Reinhart. Officer Waikel conducted a pat-down search of Reinhart's person, which revealed a glass marijuana pipe in Reinhart's front left pocket. During the search, Sergeant Waikel noticed that Reinhart smelled of alcohol. After having Reinhart's passenger exit the vehicle, officers also handcuffed him and conducted a similar pat-down search. Due to the smell of alcohol and Reinhart's bloodshot eyes and slurred speech, officers administered a portable breath test to Reinhart, which indicated that Reinhart had a blood alcohol content of .15%. Once the officers helped Reinhart to his feet, Deputy Coney conducted a second pat-down search, which revealed a baggie containing a green leafy substance that was later determined to be marijuana. Reinhart was then formally arrested and taken into custody. The passenger was released at the scene.

The State charged Reinhart with class D felony operating a vehicle while intoxicated, class A misdemeanor operating a vehicle while intoxicated, class A misdemeanor possession of marijuana, class B misdemeanor possession of paraphernalia, and driving left of center, an infraction. On October 31, 2008, Reinhart filed a motion to suppress evidence obtained as a result of the stop of his vehicle and subsequent search of his person. Following a hearing, the trial court denied Reinhart's motion on July 17, 2009. A bench trial was held on November 20, 2009. Reinhart renewed his objection to the admission of all evidence recovered following the stop of his vehicle, and the parties stipulated that the testimony and briefs related to the motion to suppress hearing would be incorporated into his objection. The trial court overruled Reinhart's objection and admitted the evidence. At the close of the evidence, the trial court found Reinhart guilty of class D felony operating a vehicle while

intoxicated and class A misdemeanor possession of marijuana. The State dismissed the other counts. This appeal ensued.

### Discussion and Decision

▬▬ We initially note that Reinhart frames our standard of review with regard to the trial court's denial of his motion to suppress evidence. However, because Reinhart appeals after a completed trial, the question of whether the trial court erred in denying his motion to suppress is no longer viable. *Kelley v. State*, 825 N.E.2d 420, 424 (Ind.Ct.App.2005). The issue is more appropriately framed as whether the trial court abused its discretion when it admitted the evidence at trial. *Washington v. State*, 784 N.E.2d 584, 586 (Ind.Ct.App.2003). When we review a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We also defer to the trial court's factual determinations unless clearly erroneous. *Id.* However, we consider "afresh any legal question of the constitutionality of a search or seizure." *Id.*

▬▬ Reinhart argues that evidence obtained following the stop of his vehicle should have been suppressed because the police officers' behavior toward him constituted an arrest without probable cause in violation of his rights under the Fourth Amendment to the United States Constitution.[1] The State counters that the evidence was obtained during a brief *Terry* investigatory stop that was justified by reasonable suspicion. The Fourth Amendment reads in part: "The right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated[.]" This protection against unreasonable seizures includes seizure of the person. *California v. Hodari D.*, 499 U.S. 621, 624–26, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A traffic stop of a vehicle and temporary detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). While a full-blown arrest or a detention that lasts for more than a short period must be justified by probable cause, the United States Supreme Court has held that a brief investigatory stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Lyons v. State*, 735 N.E.2d 1179, 1183–84 (Ind.Ct. App.2000), *trans. denied.*

It is well settled that police officers may stop a vehicle when they observe minor traffic violations. *Jackson v. State*, 785 N.E.2d 615, 619 (Ind.Ct.App.2003), *trans. denied.* Reinhart concedes that the initial traffic stop here was a valid *Terry* investigatory stop based upon the fact that Deputy Coney observed his vehicle cross left of center. However, Reinhart argues that the initial stop was converted to an arrest requiring probable cause when Deputy Coney ordered him out of his vehicle at gunpoint and instructed him to lay flat on the ground, or, at the very least, when Sergeant Waikel placed him in handcuffs.

---

1. Reinhart also contends that his rights were violated pursuant to Article 1, Section 11 of the Indiana Constitution. However, because we reverse on Fourth Amendment grounds, we need not conduct a separate state constitutional analysis.

Our supreme court has held that an arrest occurs "when a police officer interrupts the freedom of the accused and restricts his liberty of movement." *Sears v. State*, 668 N.E.2d 662, 667 (Ind.1996). While a *Terry* investigatory stop also interrupts a suspect's freedom and restricts his liberty of movement, such interruption is presumably much less intrusive and for a shorter duration than an arrest. *See Mitchell v. State*, 745 N.E.2d 775, 782 (Ind. 2001). Indeed "there is no 'bright line' for evaluating whether an investigative detention is unreasonable, and 'common sense and ordinary human experience must govern over rigid criteria.'" *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). Because a *Terry* stop is a lesser intrusion than an arrest, the scope of an investigatory stop involves such "inquiry necessary to confirm or dispel the officer's suspicions." *Hardister v. State*, 849 N.E.2d 563, 570 (Ind.2006).

As part of a valid *Terry* stop, the investigating officer is entitled to take reasonable steps to ensure his own safety, including ordering a detainee to exit the vehicle. *Bentley v. State*, 846 N.E.2d 300, 307 (Ind.Ct.App.2006), *trans. denied.* However, in this case, Deputy Coney did much more than merely order Reinhart to exit the vehicle. Deputy Coney drew his weapon, ordered Reinhart to exit the vehicle at gunpoint, and, while the laser sight of his gun was fixed on Reinhart, Deputy Coney ordered Reinhart to his knees with his hands behind his head, fingers interlaced. Reinhart stayed in this position for more than a minute before Deputy Coney ordered him to then lie flat on the road behind his vehicle with his arms out to his sides. Still at gunpoint, Reinhart stayed in this position for more than another minute before Sergeant Waikel arrived and handcuffed Reinhart. The searches of Reinhart's person, the officers observation of Reinhart's intoxication (smell of alcohol, blood-shot eyes, and slurred speech), and subsequent portable breath test all occurred after Reinhart was handcuffed.

This court has held that "[h]olding a person at gunpoint certainly restrains his liberty of movement and is a clear example of arrest," especially when police have no reason to believe that a suspect is armed. *See Taylor v. State*, 464 N.E.2d 1333, 1335 (Ind.Ct.App.1984) (action of holding defendant at gunpoint constituted arrest when police had no reason to believe defendant was armed); *see also Williams v. State*, 630 N.E.2d 221, 224 (Ind.Ct.App.1994) (ordering defendant to exit vehicle and lie on ground at gunpoint constituted arrest). In addition, placing a person in handcuffs may convert an investigatory stop into an arrest depending upon the totality of the circumstances. *Payne v. State*, 854 N.E.2d 1199, 1204–05 (Ind.Ct.App.2006), *trans. denied.*[2]

As noted by the State, in *Willis v. State*, 907 N.E.2d 541, 545 (Ind.Ct.App.2009), we recently concluded that an investigatory stop was not converted to an arrest even though police officers held the defendant at gunpoint and handcuffed him. However, the police officers in *Willis* faced unique circumstances quite distinguishable from those circumstances faced by the officers in the instant case. In *Willis*, police officers responded to a dispatch of an altercation between two African–American males, one of whom was reported to have

---

**2.** In *Payne*, we compared cases in which Indiana courts have determined that the use of handcuffs rose to the level of an arrest with cases holding the contrary. *Id.* at 1204 (comparing *Loving v. State*, 647 N.E.2d 1123 (Ind. 1995), and *Wright v. State*, 766 N.E.2d 1223 (Ind.Ct.App.2002), with *Crabtree v. State*, 762 N.E.2d 241 (Ind.Ct.App.2002), and *Johnson v. State*, 710 N.E.2d 925 (Ind.Ct.App.1999)).

been holding a gun to the head of the other. *Id.* at 543. When officers arrived at the scene, they saw the defendant, who was African–American, standing on the sidewalk with another African–American male. Officers drew their guns, approached the men, ordered the men to kneel with their hands raised, and handcuffed the men before conducting patdown searches for weapons. Under those facts, the police had a reasonable belief that the defendant was armed, and therefore we concluded that it would be unreasonable to expect a police officer to approach the suspect without his gun drawn because the risk to the officer's safety is simply too great. *Id.* at 546. Similarly, the totality of the circumstances justified the use of handcuffs during the brief detention *only* to permit the officers to determine if the suspect was, in fact, concealing a weapon. *Id.* Accordingly, we held that the police conduct did not convert the investigatory stop into an arrest "under the facts facing the officers in this case." *Id.*

▆▆▆ Unlike in *Willis,* the facts presented here indicate that what may have begun as a *Terry* investigatory stop was quickly converted to an arrest requiring probable cause. "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Deputy Coney's purported purpose in stopping Reinhart's vehicle was to investigate a possible drunk driver. While Deputy Coney testified that, at the time of the stop, he was concerned with his safety based upon Reinhart's earlier behavior of pulling into the third driveway and yelling out the window, there is no evidence suggesting that Reinhart engaged in any behavior which could have led to a specific reasonable inference that he was armed with a weapon. Therefore,

under the circumstances, Deputy Coney's action of ordering Reinhart to exit the vehicle at gunpoint was excessive.

Even if we were to find some reasonable justification for Deputy Coney to initially order Reinhart out of his vehicle with his gun drawn, we believe that the totality of the circumstances did not justify what happened next. The video recording of the stop clearly shows that not only did Reinhart immediately stop his vehicle in response to Deputy Coney's emergency lights, but also that after his vehicle was stopped, Reinhart obediently exited his vehicle and calmly complied with all of Deputy Coney's instructions. Again, Reinhart gave no indication that he was armed or dangerous. Nevertheless, with the laser sight of Deputy's Coney's gun prominently fixed on him, Reinhart was ordered first to kneel with his hands behind his head for a period and then lie face down on the ground for an additional period of time while waiting for the second police officer to arrive. Reinhart was then handcuffed before he was searched twice. We believe that a reasonable person in Reinhart's position would not have believed himself to be free to leave but instead would have considered his freedom of movement to have been restrained to the degree associated with a formal arrest. *See Loving,* 647 N.E.2d at 1125–26.

▆▆▆ While we are mindful of the significant danger faced by police officers during traffic stops, we must balance the interests of officer safety with the privacy interests protected by the Fourth Amendment in requiring law enforcement to use the least intrusive means necessary to investigate a traffic stop. *See Wilson v. State,* 745 N.E.2d 789, 792 (Ind.2001). Under the facts presented, this was more than a minimal deprivation of Reinhart's liberty of movement necessary to confirm or dispel Deputy Coney's suspicion that Reinhart was operating a vehicle while

intoxicated. The police officers' behavior in this case exceeded the scope of a *Terry* stop and became an arrest without probable cause. "To generally deter police from violating people's Fourth Amendment rights, the [United States] Supreme Court has created the exclusionary rule, which prohibits the admission of evidence seized in violation of the Fourth Amendment." *Caudle v. State*, 754 N.E.2d 33, 34 (Ind.Ct. App.2001), *opinion on reh'g trans. denied.* Because the officers here lacked probable cause to arrest Reinhart prior to their seizure of the marijuana evidence and prior to obtaining evidence that Reinhart was indeed operating a vehicle while intoxicated, the trial court abused its discretion when it admitted evidence obtained following the invalid arrest. *See Sanchez v. State*, 803 N.E.2d 215, 221 (Ind.Ct.App. 2004) (citing *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)) (the "fruit of the poisonous tree" doctrine bars evidence obtained during or as a direct result of an unlawful search or seizure), *trans. denied.*[3] Accordingly, we reverse Reinhart's convictions.

Reversed.

BAKER, C.J., and DARDEN, J., concur.

---

[3]. We note that the continued vitality of the exclusionary rule has been called into question by the U.S. Supreme Court in its Fourth Amendment jurisprudence. *See Herring v. U.S.*, —— U.S. ——, ——, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009) (recognizing that the U.S. Supreme Court has repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation). However, we apply the law as it still exists today in determining that evidence obtained as a result of Reinhart's invalid arrest should have been excluded. While our need to conduct a separate state constitutional analysis is obviated by our reversal on Fourth Amendment grounds in this case, we note that the Indiana Constitution is liberally construed in favor of protection for individuals from unreasonable intrusions on privacy. *See Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006). Regardless of whatever direction the U.S. Supreme Court chooses to pursue, we are hopeful that our supreme court will continue to recognize the full strength of the exclusionary rule and will decline to diminish the safeguards historically recognized pursuant to Article 1, Section 11 of the Indiana Constitution.