## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tracey A. Hardy,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 30, 2015

Court of Appeals Case No.
20A03-1506-CR-538

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1310-FA-56

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Tracey A. Hardy (Hardy), appeals his conviction for two Counts of dealing in cocaine, Class A felonies, Ind. Code § 35-48-4-1(a)(1)(C),(b)(3)(B)(ii) (2013); and one Count of dealing in cocaine, a Class B felony, I.C. § 35-48-4-1(a)(1)(C) (2013).

We affirm.

## ISSUES

Hardy raises three issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting evidence that was obtained during the course of a warrantless search;

(2) Whether Hardy's sentence violates the Proportionality Clause of the Indiana Constitution; and

(3) Whether Hardy's sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

In 2012, the Elkhart County Interdiction and Covert Enforcement Unit (ICE Unit)—a joint drug task force comprised of various law enforcement agencies within Elkhart County, Indiana—began compensating a confidential informant, Cooperating Source 12009 (CS-12009), to provide information about individuals in Elkhart County whom the Source believed to be engaged in dealing drugs.  Part of CS-12009's role as a confidential informant entailed participating in controlled drug purchases under the direction and supervision

of his ICE Unit handlers. At some point, CS-12009 informed the ICE Unit that Hardy was dealing cocaine.

[5] On the afternoon of August 14, 2013, CS-12009 met with several ICE Unit officers, including Detective Andrew Whitmyer (Detective Whitmyer) and Detective Brian Schroth (Detective Schroth), for the purpose of arranging and carrying out a controlled drug purchase from Hardy. In the presence of the officers, CS-12009 placed a phone call to Hardy and set up the transaction. The officers searched CS-12009 to ensure that he was not in possession of any weapons, drugs, or large sums of money and equipped him with a concealed audio recording and transmitting device. The officers also provided CS-12009 with $80.00 in cash, which the officers had previously photocopied in order to keep track of the currency's serial numbers. Then, as the police maintained visual and audio surveillance, CS-12009 walked to a liquor store where he had agreed to meet with Hardy. A short time later, Hardy pulled up in a white Chevrolet Monte Carlo, and CS-12009 climbed into the passenger seat. The officers discretely followed the Monte Carlo as it traveled several blocks to a house located at 905 West Marion Street in Elkhart. There, CS-12009 waited as Hardy went inside the house, "got the drugs and brought them back out." (Tr. p. 164). Detective Schroth followed as Hardy drove CS-12009 back to the liquor store. Once Hardy pulled away, CS-12009 reconvened with the officers and was again subjected to a thorough search. In addition to returning $20.00 of the buy money to Detective Whitmyer, CS-12009 handed Detective Schroth three plastic baggies appearing to contain crack cocaine, the total weight of

which was .72 grams. The substance in one of the baggies tested positive for .22 grams of cocaine.

[6] On September 9, 2013, CS-12009 arranged a second controlled purchase involving Hardy. Once again, CS-12009 met with several ICE Unit officers, at which time he was searched, outfitted with a recording and transmitting device, and provided with $40.00 in buy money that had previously been photocopied. This time, Detective Whitmyer, Detective Schroth, and two other ICE Unit officers monitored CS-12009 as he walked to 318 West Jefferson Street in Elkhart and went inside.[1] A short time later, the officers observed as Hardy's white Monte Carlo pulled up to the house and Hardy went inside. A few minutes later, CS-12009 emerged and walked back to the officers' meeting location. After being searched, CS-12009 turned over two plastic baggies that appeared to contain crack cocaine and which had a total weight of .38 grams. The substance in one of the baggies tested positive for .17 grams of cocaine.

[7] On September 11, 2013, CS-12009 arranged for a final controlled cocaine purchase from Hardy. As before, the ICE Unit officers thoroughly searched CS-12009, equipped him with a recording and transmitting device, and supplied $90.00 in photocopied cash to complete the purchase. With the officers watching, CS-12009 walked down the block to 318 West Jefferson—where the white Monte Carlo was already parked out front—and went inside for a few

---

[1] Detective Schroth testified that 318 West Jefferson Street is located only 743 feet away from Langle Park, which is a public park.

minutes. Upon his return to the ICE Unit meeting location, CS-12009 was searched, and he tendered four plastic baggies to the officers, which appeared to contain crack cocaine and weighed a total of .67 grams. The substance in one of the baggies tested positive for .13 grams of cocaine.

[8] For several hours following the third controlled drug purchase, ICE Unit officers maintained surveillance of 318 West Jefferson Street and Hardy's Monte Carlo. At this point, Detective Whitmyer and Detective Schroth agreed that they had probable cause to arrest Hardy for dealing in cocaine, but they discussed the possibility that Hardy might be willing to provide information about his supplier or act as a confidential informant. When Hardy finally emerged and drove away from 318 West Jefferson, a uniformed patrol officer with the Elkhart Police Department initiated a traffic stop. Detective Whitmyer and Detective Schroth—who had followed the patrol officer as he initiated the stop—removed Hardy from his vehicle, informed him that he was under arrest, placed him in handcuffs, conducted a cursory pat-down search for weapons, and transferred him to an unmarked police vehicle. Detective Whitmyer and Detective Schroth drove Hardy to a nearby park while other officers relocated Hardy's recognizable vehicle to a more inconspicuous location in order to avoid alerting any neighbors to the fact that Hardy was talking to the police.

[9] Once at the park, the officers conducted a more thorough search of Hardy's person, seizing $975.00 from his pant pockets. The serial numbers on $55.00 of the recovered bills matched the photocopied money that CS-12009 had used to purchase cocaine earlier that day. Based on their conversation with Hardy,

Detective Whitmyer and Detective Schroth decided to release Hardy rather than taking him to jail to be booked. Approximately one month later, on October 10, 2013, the State filed an Information, charging Hardy with Counts I and II, dealing in cocaine within 1,000 feet of a public park, Class A felonies, I.C. § 35-48-4-1(a)(1)(C),(b)(3)(B)(ii) (2013); and Count III, dealing in cocaine, a Class B felony, I.C. § 35-48-4-1(a)(1)(C) (2013).

[10] On April 20-21, 2015, the trial court conducted a jury trial. Before any evidence was presented, Hardy moved to suppress the buy money that was seized from his pockets following the September 11, 2013 controlled drug purchase, arguing that the warrantless search was unlawful. After a hearing outside the jury's presence, the trial court denied Hardy's suppression motion.[2] At the close of the evidence, the jury returned a guilty verdict on all Counts, and the trial court entered a judgment of conviction on the same. On May 14, 2015, the trial court held a sentencing hearing. The trial court imposed a sentence of forty-one years each on Counts I and II and a sentence of ten years on Count III—all to be served concurrently for an aggregate sentence of forty-one years, fully executed in the Indiana Department of Correction (DOC).

[11] Hardy now appeals. Additional facts will be provided as necessary.

---

[2] However, the trial court excluded from evidence any statements that were made by Hardy during the course of his arrest and interaction with law enforcement on September 11, 2013, because he never received his *Miranda* warnings.

## DISCUSSION AND DECISION

### I. *Admission of Evidence*

[12] Hardy claims that the trial court erred in denying his motion to suppress the buy money from evidence. As Hardy appeals following a completed trial, "the question of whether the trial court erred in denying his motion to suppress is no longer viable." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). Instead, the issue before our court "is more appropriately framed as whether the trial court abused its discretion when it admitted the evidence at trial." *Id.*

[13] According to Hardy, the admission of the buy money into evidence violated his rights under the Fourth Amendment because it was seized during the course of a warrantless search.[3] When reviewing a trial court's ruling on the admissibility of evidence obtained from an allegedly illegal search, we do not reweigh evidence, and we will consider any conflicting evidence in a light most favorable to the trial court's ruling. *Reinhart*, 930 N.E.2d at 45. While we defer to the trial court's factual determinations unless they are clearly erroneous, we review a ruling on the constitutionality of a search or seizure *de novo*. *Id.*

---

[3] Hardy also generally asserts that the search was improper under Article 1, Section 11 of the Indiana Constitution, "which is identical to the Fourth Amendment." *Stark v. State*, 960 N.E.2d 887, 892 (Ind. Ct. App. 2012), *trans. denied*. However, a claim under the Indiana Constitution "turns on an evaluation of the 'reasonableness' of the conduct of the law enforcement officers, not on the expectation of privacy commonly associated with Fourth Amendment analysis." *Id.* Because Hardy has neither set forth the specific standard utilized in Article 1, Section 11 cases nor presented a cogent argument regarding the reasonableness of the law enforcement officers' conduct, we find that he has waived his claim under the Indiana Constitution. *See* Ind. Appellate Rule 46(A)(8)(a).

[14] The Fourth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects[] against unreasonable searches and seizures." U.S. CONST. amend IV. In general, a search warrant is required as "a prerequisite to a constitutionally proper search and seizure." *Danner v. State*, 931 N.E.2d 421, 428 (Ind. Ct. App. 2010), *trans. denied*. As a result, when a search or seizure is conducted in the absence of a warrant, the State bears the burden of proving that one of the well-delineated exceptions to the warrant requirement existed at the time of the search or seizure. *Id.*

[15] During the suppression hearing, the State argued that the buy money was lawfully seized during a search incident to arrest. It is well established that a search incident to an arrest is a valid exception to the warrant requirement. *Stark*, 960 N.E.2d at 889 (citing *Chimel v. California*, 395 U.S. 752, 763 (1969), *reh'g denied*). The search incident to arrest exception to the warrant requirement "'derives from interests in officer safety and evidence preservation.'" *Id.* (quoting *Arizona v. Grant*, 556 U.S. 332, 332 (2009)). Thus, "a search incident to arrest may include the arrestee's person and the area within his immediate control—[meaning] the area from within which he might gain possession of a weapon or destructible evidence." *Id.* (internal quotation marks omitted) (quoting *Chimel*, 395 U.S. at 763). A search incident to arrest is only valid if the arrest itself is lawful; therefore, "[p]robable cause must be present to support the arrest." *VanPelt v. State*, 760 N.E.2d 218, 222 (Ind. Ct. App. 2001), *trans. denied*.

Hardy contends that the drug money was not seized pursuant to a valid search incident to arrest because he "was never arrested and the law enforcement officers had sufficient time to obtain a warrant before stopping Hardy, but [they] declined to do so." (Appellant's Br. p. 7). Rather, he asserts that "[t]he stop was a mere rouse [*sic*] to coerce Hardy to provide information to the police, and therefore cannot be a sufficient basis to violate Hardy's [Fourth] Amendment right against unlawful searches and seizures." (Appellant's Br. p. 8). We disagree.

In order for a search incident to arrest to constitute a valid exception to the warrant requirement, "the search and the arrest must be 'substantially contemporaneous,' and the search must be confined to the immediate vicinity of the arrest." *Edwards v. State*, 759 N.E.2d 626, 629 (Ind. 2001) (quoting *Townsend v. State*, 460 N.E.2d 139, 141 (Ind. 1984)). Here, Hardy was informed that he was under arrest at the time the ICE Unit officers conducted the search of his pockets; however, he was subsequently released and was not re-arrested for approximately another month. Notwithstanding whether Hardy's arrest was, in fact, contemporaneous with the search of his person, our court has resolved that "[t]he critical issue is not *when* the arrest occurs but whether there was probable cause to arrest at the time of the search." *VanPelt*, 760 N.E.2d at 222-23 (holding "that the search incident to arrest exception, which typically applies when a search and arrest are contemporaneous, also applies where, as here, law enforcement conducts a lawful search but merely delays an otherwise valid arrest until after consultation with a prosecutor"). "So long as probable

cause exists to make an arrest, the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search." *Sebastian v. State*, 726 N.E.2d 827, 830 (Ind. Ct. App. 2000), *trans. denied*.

[18] Probable cause to arrest is established if a police officer "has knowledge of facts and circumstances that would warrant a man of reasonable caution to believe that a suspect has committed the criminal act in question." *VanPelt*, 760 N.E.2d at 223. We are unconcerned with the officer's subjective belief regarding whether he or she has probable cause to make an arrest; instead, it is the officer's "actual knowledge of objective facts and circumstances [that] is determinative." *Id.* In this case, our review is limited to whether the officers had probable cause to arrest Hardy—thereby permitting a search incident to arrest—without any consideration as to the validity of the traffic stop itself. The record reveals that Detective Whitmyer and Detective Schroth monitored CS-12009 as he arranged for and subsequently purchased cocaine from Hardy on three separate occasions, with the last transaction occurring just a few hours prior to the search at issue. Following each controlled purchase, CS-12009 confirmed for the officers that it was Hardy who had directly provided him with the varying quantities of crack cocaine in exchange for the cash supplied by the ICE Unit. Accordingly, we find that the officers had probable cause to believe that Hardy had committed the crime of dealing in cocaine at the time they conducted the search. Therefore, the trial court acted within its discretion in admitting into evidence the buy money that was seized from Hardy's pockets.

## II. *Proportionality of Sentence*

[19] Hardy next claims that his forty-one-year sentence is disproportionate to the nature of his offenses in violation of the Proportionality Clause of the Indiana Constitution, which mandates that "[a]ll penalties shall be proportioned to the nature of the offense." IND. CONST. art. 1, § 16. In light of significant legislative changes to Indiana's criminal statutes, which were enacted subsequent to the date of Hardy's offenses but prior to his sentencing, Hardy argues that his

> sentence should be reduced to be proportionate to similarly situated defendants being sentenced at the same time as Hardy. To hold otherwise, Hardy will be sentenced significantly more harshly than offenders who may have even been sentenced before him simply because of the date upon which the police decided to target him.

(Appellant's Br. p. 11).

[20] "The nature and extent of penal sanctions is primarily a legislative consideration, and our review of legislative prescriptions of punishment is 'highly restrained' and 'very deferential.'" *Foreman v. State*, 865 N.E.2d 652, 655 (Ind. Ct. App. 2007) (quoting *State v. Moss-Dwyer*, 686 N.E.2d 109, 111 (Ind. 1997)), *reh'g denied*; *trans. denied*. Absent "a showing of clear constitutional infirmity[,]" our court will not interfere with the legislature's determination of an appropriate penalty. *Id.* Moreover, "we are not at liberty to set aside a legislatively sanctioned penalty merely because it seems too severe." *Id.* Rather, we will find that "[a] criminal penalty violates the

proportionality clause 'only when a criminal penalty is not graduated and proportioned to the nature of the offense.'" *Id.* (quoting *Conner v. State*, 626 N.E.2d 803, 806 (Ind. 1993)). That is, "a legislatively determined penalty will be deemed unconstitutional by reason of its length only if it is so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people." *Id.* (internal quotation marks omitted).

[21] At the time Hardy committed the present offenses, the crime of dealing in cocaine within 1,000 feet of a public park was classified as a Class A felony, with a sentencing range of twenty to fifty years. I.C. §§ 35-48-4-1(a)(1)(C),(b)(3)(B)(ii) (2013); 35-50-2-4 (2013). The general crime of dealing in cocaine was classified as a Class B felony, with a sentencing range of six to twenty years. I.C. §§ 35-48-4-1(a)(1)(C) (2013); 35-50-2-5 (2013). On July 1, 2014, while Hardy's charges were pending, the Indiana General Assembly enacted a significant revision to the State's criminal code. In pertinent part, the crime of dealing in cocaine (if the amount is less than one gram) was re-classified to a Level 5 felony,[4] which carries a sentencing range of one to six years. I.C. § 35-48-4-1(a)(1)(C) (2014), *amended by* P.L. 158-2013 § 622 & P.L.

---

[4] Under the amended statute, the crime of dealing in cocaine is no longer enhanced to a more serious felony level simply by virtue of the fact that the sale occurred within 1,000 feet of a public park. *Compare* I.C. § 35-48-4-1(b)(3)(B)(ii) (2013), *with* I.C. § 35-48-4-1 (2014); *see* Ind. Pub. Law No. 158-2013 § 622.

168-2014 § 91; I.C. § 35-50-2-6(b) (2014), *amended by* P.L. 158-2013 § 659 & P.L. 168-2014 § 116.

[22] Hardy directs our attention to Indiana Code section 35-32-1-1(6),(8) (2014), which provides that Indiana's criminal code should be construed to "keep dangerous offenders in prison by avoiding the use of scarce prison space for nonviolent offenders" and to "maintain proportionality of penalties across the criminal code, with like sentences for like crimes." He posits that "[a] forty-one (41) year executed sentence [for] delivering less than one gram of cocaine to an informant is contrary to the goal of reducing non-violent offenders or making proportional sentences for like crimes and is so out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people." (Appellant's Br. p. 11). Furthermore, Hardy contends:

> The reduction in sentences for drug offenses were so dramatically reduced[] that it goes against logic to say that the changes were not an ameliorative change necessary to reduce overly harsh sentences disproportionate to the crime. As an example, Hardy's offense, which he faced a maximum of fifty (50) years would have a maximum sentence of only six (6) years as a [L]evel 5 felony since he had less than one gram of cocaine and was not within 500 [*sic*] feet from a public park. That is a reduction of almost nine times the sentences available prior to the change in laws. It is illogical to suggest that the reduction did not reflect a recognition that the sentences were overly harsh and disproportionate to the crime in violation of the Indiana Constitution.

(Appellant's Br. p. 10). In other words, Hardy argues that retroactive application of the ameliorative penal provisions of the new criminal code is required in order to avoid a disproportionate sentence.

[23] It is a longstanding rule that criminal "defendants must be sentenced under the statute in effect at the time the defendant committed the offense." *Turner v. State*, 870 N.E.2d 1083, 1085 (Ind. Ct. App. 2007). However, "the doctrine of amelioration allows a defendant, who is sentenced after the effective date of a statute that provides for more lenient sentencing, to take advantage of the more lenient statute rather than be sentenced under the more harsh statute that was in effect when the defendant was charged or convicted." *Id.* This doctrine is only applicable "if the legislature intended that the statute as amended apply to all persons to whom such application would be possible and constitutional." *Id.* at 1085-86. Thus, if the legislature "expressly states in a specific savings clause an intention that crimes committed before the effective date of the ameliorative amendment should be prosecuted under prior law[,]" the doctrine of amelioration does not apply. *Whittaker v. State*, 33 N.E.3d 1063, 1065 (Ind. Ct. App. 2015).

[24] If Hardy had committed his offenses after the enactment of the revised code, he would have been charged with three Level 5 felonies, rather than two Class A felonies and one Class B felony. Additionally, he would have only been subject to a maximum term of incarceration of eighteen years, as opposed to the aggregate forty-one year sentence he actually received. However, in implementing the criminal code revision, the General Assembly also enacted

the following specific savings clause covering the entirety of the new criminal code:

> (a) A SECTION of P.L. 158-2013 or HEA 1006-2014 does not affect:
> (1) penalties incurred;
> (2) crimes committed; or
> (3) proceedings begun;
> before the effective date of that SECTION of P.L. 158-2013 or HEA 1006-2014. Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if that SECTION of P.L. 158-2013 or HEA 1006-2014 had not been enacted.
>
> (b) The general assembly does not intend the doctrine of amelioration (*see Vicory v. State*, 400 N.E.2d 1380 (Ind. 1980)) to apply to any SECTION of P.L. 158-2013 or HEA 1006-2014.

I.C. § 1-1-5.5-21 (2014) (Italics added).

[25] While Hardy acknowledges the existence of this specific savings clause, he insists that "this [c]ourt cannot ignore the reality that the changes in the law came in conjunction with nationwide calls for reform to Draconian drug sentences, which have filled U.S. prisons to capacity and sentenced drug offenders to longer sentences than violent criminals." (Appellant's Br. p. 10). However, Hardy cannot ignore the fact that the General Assembly made it "abundantly clear" that it "intended the new criminal code to have no effect on criminal proceedings for offenses committed prior to the enactment of the new code." *Whittaker*, 33 N.E.3d at 1066. Moreover, our supreme court has

previously recognized that "[t]he legislature acts from the lessons of history and experience. Revision of laws is often a slow process[,]" and "the needs of justice are not static." *Vicory*, 400 N.E.2d at 1382. In revising criminal statutes, "public policy decisions are made in light of current developments: crime statistics, new theories of criminal reformation, prison populations and court dockets. Turbulent times are likely to bring about criminal code revisions." *Id.* Nevertheless, "[t]he adoption of a new system as a better means of serving the constitutional purpose of our penal system does not mean that prior law did not serve that purpose." *Id.* Accordingly, based on the unambiguous intent of the legislature, we conclude that Hardy's sentence is not contrary to the Proportionality Clause as the trial court properly sentenced him under the statutory scheme that was in effect at the time he committed his offenses.

### III. *Appropriateness of Sentence*

Lastly, Hardy claims that his aggregate forty-one year sentence is inappropriate. It is long settled "that sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Despite the fact that the trial court imposed a sentence that is authorized by statute, our court may revise Hardy's sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B).

With respect to Appellate Rule 7(B), "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles

for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. In making this determination, we focus on the length of the aggregate sentence and the manner in which it is to be served. *Id.* Hardy bears the burden of proving that his sentence is inappropriate. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007).

[28]  Hardy argues that his sentence is inappropriate because he

> was targeted by the Elkhart [ICE Unit] and delivered a small quantity of cocaine, less than one gram on each occasion, to a career confidential informant who earned a living by getting paid to set up drug deals. Although Hardy had a criminal history, the law enforcement officers in the drug unit did not consider Hardy a great risk to the community in that they released him after three controlled drug buys and offered him an opportunity to work with them and provide information. Hardy had no weapons or large quantities of drugs. There was nothing more egregious about the offense committed by Hardy that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence.

(Appellant's Br. p. 12).

[29]  We agree with the State that, "[a]side from a terse mention of his criminal history, Hardy's argument does not refer to anything which might bear on his character." (State's Br. p. 22). Instead, Hardy's argument focuses on the nature

of his offenses, and "revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). By failing to present a cogent argument regarding the inappropriateness of his sentence in light of his character, Hardy has waived his request for this court to review his sentence under Appellate Rule 7(B). *See* App. R. 46(A)(8)(a); *Williams*, 891 N.E.2d at 633.

[30] Waiver notwithstanding, we find no basis to revise Hardy's sentence. The nature of the offense reveals that on three separate occasions within the course of a month, Hardy sold cocaine to CS-12009. Two of these transactions occurred less than 1,000 feet from a public park frequented by children.

[31] As to the character of the offender, we note that Hardy has a lengthy criminal history, including a conviction in 1995 for two Counts of dealing in cocaine as Class B felonies, for which he received an eight-year executed sentence in the DOC. Hardy was also convicted of misdemeanor domestic battery in 2001; two Counts of Class A misdemeanor battery resulting in bodily injury in 2004, one of which was against a child; misdemeanor battery in 2006; Class A misdemeanor operating a vehicle while intoxicated in a manner that endangered a person in 2008; and Class D felony operating a vehicle with a blood alcohol concentration of 0.15% or greater in 2010.

[32] During sentencing, the trial court noted that prior attempts to sanction Hardy's conduct and rehabilitate him included: fines and costs, probation (which he

violated on at least four occasions), alcohol and drug treatment, drug testing, restitution, anger management classes, suspended sentences, community corrections placement, community service, work release, mental health treatment, and executed time in the DOC. Yet, none of these measures were sufficient to deter him from committing the present offenses. Furthermore, as the trial court indicated, Hardy's admitted use of cocaine and marijuana and his significant criminal record—particularly his prior conviction for two Counts of dealing in cocaine—demonstrate "an unwillingness to conform [his] conduct to the requirements of [the] law or just simply [an] unwillingness to abide by the law." (Tr. p. 336). Consequently, as the trial court found, "longer term incarceration" is now necessary. (Tr. p. 337).

[33] Hardy reiterates that our court "should consider the changes in Indiana sentencing laws which significantly reduced the penalties for similar offenses." (Appellant's Br. p. 12). As this court has previously stated, "We will not use our authority under Indiana Appellate Rule 7(B) to, in effect, give retroactive effect to the new criminal code." *Ellis v. State*, 29 N.E.3d 792, 801 (Ind. Ct. App. 2015), *trans. denied*. We therefore affirm Hardy's forty-one year sentence.

## CONCLUSION

[34] Based on the foregoing, we conclude that the trial court acted within its discretion in admitting the evidence that was seized from Hardy's pockets during a search incident to arrest. We further conclude that the trial court properly sentenced Hardy under the statutory scheme in effect at the time he

committed his offenses, and Hardy's sentence is appropriate based on the nature of the offense and his character.

[35] Affirmed.

[36] Brown, J. and Altice, J. concur