May, Judge, dissenting.
[20] Because I believe the search of Smith's vehicle violated his rights against illegal search and seizure under the Fourth Amendment to the United States Constitution,[9] I respectfully dissent.
*677 Reasonable Suspicion
[21] The majority opinion relies primarily on the United States Supreme Court case Navarette v. California , 572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014). As the majority notes, Navarette "held that, even where an anonymous tip contained no prediction of future behavior, there was nevertheless sufficient indicia of reliability to support a Terry stop where an anonymous caller to an emergency police number gave eyewitness knowledge of alleged dangerous activity and accurate information identifying the suspect." O p . at ¶ 9. However, I believe an examination of the facts distinguishes Navarette from the case before us.
[22] In Navarette , the Court found the following scenario to contain sufficient information from which a traffic stop could be justified based on an anonymous call:
The Humboldt County dispatcher relayed a tip from a 911 caller, which the Mendocino County team recorded as follows: " 'Showing southbound Highway 1 at mile marker 88, Silver Ford pickup. Plate of 8-David-94925. Ran the reporting party off the roadway and was last seen approximately five [minutes] ago.' " The Mendocino County team then broadcast that information to CHP [California Highway Patrol] officers at 3:47 p.m.
Navarette , 572 U.S. at 395, 134 S.Ct. 1683 (internal citations omitted).
[23] Approximately fifteen minutes after the dispatch, a CHP officer observed a truck matching that description and initiated a traffic stop. When the officer approached the vehicle, he noted an odor of marijuana. A search of the truck revealed thirty pounds of marijuana. The defendants were charged with transporting marijuana and moved to suppress the evidence from the stop, arguing the officer lacked reasonable suspicion of criminal activity as required to effectuate a traffic stop. The motion to suppress was denied. Id. at 396, 134 S.Ct. 1683.
[24] In examining whether the officer had reasonable suspicion, the Navarette Court examined the reliability of the anonymous call based on three factors: (1) the reliability of the information given; (2) the amount of time which passed from the call to the location of the vehicle; and (3) the use of a 911 system. Id. at 398-401, 134 S.Ct. 1683. The Court determined the information given by the anonymous caller was reliable because she gave the type of vehicle, the color of the vehicle, and the license plate number of the vehicle that ran her off the road, which "necessarily implies that the informant knows the other car was driven dangerously." Id. at 399, 134 S.Ct. 1683. The contemporaneous nature of the call also bolstered the reliability of the anonymous tip, as the Court observed:
Police confirmed the truck's location near mile marker 69 (roughly 19 highway miles south of the location reported in the 911 call) at 4:00 p.m. (roughly 18 minutes after the 911 call). That timeline of events suggests that the caller reported the incident soon after she was run off the road. That sort of contemporaneous report has long been treated as especially reliable.
Id.
[25] Finally, the Court recognized the ability to trace and identify anonymous callers through the 911 system. Id. at 400-1, 134 S.Ct. 1683. The Court reasoned the ability to track 911 calls provided "safeguards against making false reports with immunity[,]" id. at 1689, which was a concern in earlier cases. The Court stated:
*678 "As this case illustrates, see n. 1[10] supra , 911 calls can be recorded, which provides victims with an opportunity to identify the false tipster's voice and subject him to prosecution[.]" Id. at 400, 134 S.Ct. 1683 (footnote added). After considering the factors enumerated, the Navarette Court concluded there existed sufficient reasonable suspicion to conduct a Terry stop of Navarette's vehicle, but acknowledged it was a "close case." Id. at 404, 134 S.Ct. 1683 (quoting Alabama v. White , 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ).
[26] A "close case" also exists here; however, I do not believe the information given by the anonymous caller rose to the same level of reliability that the Navarette Court found sufficient to establish reasonable suspicion. Officer Moore testified he received a dispatch at approximately 1:15 a.m. on November 26, 2017, indicating an anonymous caller reported "shots-fired" from a "gray or silver TrailBlazer ... [with] moderate damage on it. ...in the area" of Market Street in downtown Indianapolis. (Tr. Vol. II at 7, 14.) Officer Moore testified the dispatch indicated the Trailblazer had damage "all over" it. (Id. at 11.) Unlike the information given in Navarette , Officer Moore did not testify the dispatch gave him a license plate number and Officer Moore did not indicate when the anonymous call came in to dispatch.
[27] Further, what seems to distinguish Navarette from earlier cases is the Court's conclusion that anonymous information gleaned from a 911 call was more reliable because the caller could be traced and identified if need be. Navarette , 572 U.S. at 400-1, 134 S.Ct. 1683. However, information gleaned from modern 911 systems is not always inherently reliable.
[28] For example, the 7th Circuit Court distinguished Navarette on that basis in United States v. Watson , 900 F.3d 892 (7th Cir. 2018). The Watson Court considered the factors set forth in Navarette when analyzing an anonymous call reporting "seeing 'boys' 'playing with guns' by a 'gray and greenish Charger' " in a parking lot near the caller. Id. at 893. The 7th Circuit determined the anonymous tip was not sufficient to provide reasonable suspicion based on the Navarette factors partially because the Court felt the call was less reliable than the call in Navarette . The Court noted:
First and most significantly, Navarette's rationale for deeming 911 calls reliable has much less force here. The Supreme Court concluded that 911 calls are more dependable because their features "provide some safeguards against making false reports with immunity." Specifically, the calls are recorded, so a victim of a false report may be able to identify the anonymous caller's voice later, and the calls can be traced back to a particular phone number and geographic location. But here, the caller borrowed a stranger's phone, limiting the usefulness of the system's tracing ability. Any phone number identified would not lead back to the caller because he had no permanent connection to the phone, and the phone's geographic location at the time of the call would be useful only so long as the caller remained near the phone. Under these circumstances, it is not obvious that the young caller would be worried about getting caught providing false information *679 and therefore "think twice" before doing it.
Id. at 895 (internal citations omitted). The same is true here - the record does not contain information about the 911 call - whether it came from a cell phone or a landline, if the caller owned the phone from which the call came, and where the caller and the phone were when making the report.
[29] As a final point, I note the factual disparity between the case before us and one of the cases the majority cites to bolster its reliance on Navarette , that is, United States v. Jeanes , 2017 WL 74766, at *1 (N.D. Ind. Jan. 9, 2017). Most notably, in Jeanes , in which the Indiana District Court affirmed a traffic stop based on reasonable suspicion, the recording of the 911 call was admitted into evidence and the anonymous caller provided " 'play-by-play' eyewitness commentary as she was following the subject vehicle." Jeanes , slip op . at *6. Here, it is not clear what the anonymous caller said or when the call was received. The record does not contain a transcript or recording of the 911 call. The only evidence that we are permitted to review - and all the trial court relied on for this issue - is Officer Moore's testimony, the contents of which I do not believe provide evidence of reasonable suspicion to effectuate a Terry stop.
[30] I cannot agree that an anonymous tip of shots fired from a grey SUV with moderate damage all over it somewhere near Market Street with an indeterminate time frame, unknown location of the shots, unknown location of the caller, and lack of additional information regarding the vehicle or the vehicle's occupants gave Officer Moore reasonable suspicion to stop Smith's vehicle, order the occupants out of the vehicle at gunpoint, handcuff the occupants, move them to the rear of the car, and conduct a search of Smith's vehicle without Smith's consent. Therefore, I respectfully dissent.

Smith also argues the search violated his rights under Article 1, Section 11 of the Indiana Constitution. However, as I would hold his Fourth Amendment rights were violated, I need not address that argument. See Reinhart v. State , 930 N.E.2d 42, 45 n.2 (Ind. Ct. App. 2010) (when case is reversed on Fourth Amendment grounds, no state constitutional analysis required).

Footnote 1 in the Navarette opinion indicates that although there existed a recording of the 911 call in which the tipster identified herself, the recording was not admitted into evidence because neither the tipster or the 911 dispatcher testified. Thus, the "prosecution proceeded to treat the tip as anonymous, and the lower courts followed suit." Navarette , 572 U.S. at 396 n.1, 134 S.Ct. 1683.