## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 18 2019, 6:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William T. Gudger, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 18, 2019 <br><br> Court of Appeals Case No. 18A-CR-525 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable Brant J. Parry, Judge <br><br> Trial Court Cause No. 34D02-1604-F3-78 |

**Najam, Judge.**

## Statement of the Case

William T. Gudger appeals his conviction for robbery, as a Level 3 felony, following a jury trial. Gudger presents one issue for our review, namely, whether the trial court erred when it admitted evidence that law enforcement officers had seized pursuant to a search of his residence.

We affirm.

## Facts and Procedural History

On April 6, 2016, Gudger entered a bank in Kokomo wearing "fake hair" under a hat, sunglasses, a sweatshirt, and a dark coat. Tr. Vol. II at 96. One of the employees of the bank, Jenna Canady, approached Gudger to ask him to remove his hat and sunglasses. In response, Gudger pulled out a gun and stated: "This is a f\*\*king robbery. Put your hands up. I want $20,000." *Id.* After the bank tellers did not respond to Gudger's demand quickly enough, Gudger "got angry" and fired a shot at the floor. *Id.* at 94. The bank tellers then gave Gudger $5,967.

Shortly after Gudger had left, law enforcement officers arrived at the scene and found pieces of the shattered bullet on the floor. Officers also found tire tracks and two twenty-dollar bills in a grassy area outside of the bank. The officers then obtained a copy of the video from the bank's surveillance camera, which had recorded the robbery.

After he had obtained the money, Gudger fled the scene. He called his sister, Kristen Gudger, and asked her to pick him up. It "sounded like something was wrong," so Kristen left work in Indianapolis to pick Gudger up. *Id*. at 64. Gudger sent Kristen a text message with an address in Kokomo where he would be waiting. Once Kristen arrived at the address, Gudger and his girlfriend, Beverly Harris, got into Kristen's car, and Kristen drove them to Indianapolis.

At one point during the drive, Gudger stated: "f**k, f**k . . . I forgot the bag." *Id*. at 68. Gudger then asked Kristen if they could turn around so that he could get his bag. Kristen refused, and she asked Gudger what he had done. Gudger responded: "I do what I do best." *Id*. He then pulled out "a decent wad of cash" from his pocket, which was "unusual" for him to have. *Id*. at 69, 88. Based on a prior conversation in which Gudger had told Kristen that "[a]ll he would have to do is rob a bank" to solve his problems, Kristen determined that Gudger had robbed a bank. *Id*. at 70. Kristen then began "freaking out," but she did not want Gudger or Harris to know, so she continued to drive to Indianapolis. *Id*. at 69.

As they approached Indianapolis, Gudger asked Kristen if she would take them to a mall. Kristen complied, and Gudger and Harris purchased some items. The three then went to a restaurant. After they had finished their meal, they drove to a gas station. While there, Gudger saw a news story about the robbery on his phone. Gudger told Kristen that "he had used a gun" and that he had shot the gun into the floor, but he did not specifically tell Kristen that he had

robbed a bank. *Id.* at 75. After they left the gas station, Kristen dropped Gudger and Harris off at a hotel where they stayed for the night.

[8] The next morning, Kristen contacted Detective Robert Scaife with the Muncie Police Department, who is her uncle. Kristen informed Detective Scaife that Gudger had robbed a bank in Kokomo. Detective Scaife then called Kokomo Police Detective Michael Banush and told Detective Banush about his phone call with Kristen.

[9] Detective Banush then "immediately" called Kristen. *Id.* at 122. Kristen relayed all of the facts from the previous day to Detective Banush. Kristen specifically told Detective Banush that she had picked Gudger and Harris up from a house at 720 South Purdum Street in Kokomo and that they had checked into room number 255 at the Best Western hotel in Indianapolis.

[10] Detective Banush was able to confirm that Harris had checked into room 255 of a Comfort Inn that had previously been a Best Western and that Harris lived at 720 South Purdum Street. Detective Banush applied for a search warrant for Harris' house. In support of his request for the search warrant, Detective Banush filed an affidavit of probable cause that stated in part:

> On 04/06/2016 at approximately 3:30 pm, Officers of the Kokomo Police Department were sent to Security Federal Bank, 519 E. Markland Ave. in reference to a bank robbery. Dispatch advised that a black male entered the bank with a handgun, stated, "This is a robbery" and demanded $20,000.00. The male ordered everyone to put their hands up, fired the handgun toward the floor and demanded $20,000.00 again. The tellers handed the

suspect cash and he left the bank. The employees described the suspect as a black male, 5-9 to 5-10 in height, thin build, having dreadlocks, wearing a gray hooded sweatshirt, black pea coat, black hat, sunglasses[,] blue jeans[,] and blue tennis shoes.

On 04/07/2016, the affiant received a phone call from a Det. Robert Scaife of the Muncie Police Department. Det. Scaife stated that his niece, Kristen Gudger called him this morning and said that her brother robbed the bank in Kokomo yesterday. The affiant contacted Kristen Gudger of Indianapolis IN and she stated that her brother is William T. Gudger, DOB: 03/15/1982. She stated that on yesterday's date, William called her and asked her to pick him up in Kokomo. She stated that she drove to Kokomo and picked William and his girlfriend up from 720 S. Purdum Street. She identified the girlfriend as a black female named Beverly who lives at 720 S. Purdum St. She stated that William wanted her to take him and Beverly to Indianapolis IN. On the way to Indianapolis, William told her that he robbed a bank with a gun and showed her a pocket full of cash. Kristen asked William which bank he robbed and he told her that he robbed the bank where all of the police cars were. It should be noted that 720 S. Purdum is just blocks from Security Federal Bank. William also told her that he robbed the bank 1 1/2 hours ago. William also gave her $300.00 cash for picking him up and driving him and Beverly to Indianapolis. Kristen said that on the way to Indianapolis, William told Beverly that he forgot to bring the bag containing the clothes that he wore during the bank robbery. Kristen stated the bag of clothes is in the residence at 720 S. Purdum St. Kristen stated that she drove William and Beverly to a Best Western Hotel at Washington Street and I465. She stated that William and Beverly checked into room #255. Kristen also stated that William called her today and wants her to pick him up at the hotel and drive him back to 720 S. Purdum St. so he can get the bag of clothes and destroy them.

The Indianapolis State Police went to Washington Street and I465 and found a Comfort Stay Inn that used to be a Best Western, 7610 Old Trail Rd. Indianapolis IN. ISP investigators confirmed with the hotel staff that Beverly Harris is a registered guest in room #255. Investigators also confirmed that Beverly Harris resides at 720 S. Purdum St. in Kokomo IN.

Appealed Order at 2-3.

[11] The trial court granted the search warrant, and officers executed the warrant later that day. As a result of the search, the officers discovered a white trash bag that contained a black wig, a black pea coat, blue tennis shoes, and pants. Officers also found a gray hooded sweatshirt on top of a clothes basket and a pair of sunglasses. Those items matched the items officers were able to observe on the bank's surveillance video.

[12] Following that search, Detective Banush applied for a search warrant for the hotel room, which the trial court granted. Officers went to the hotel in order to execute the search warrant. Prior to searching the hotel room, officers arrested Gudger and found "a large amount of cash" in his pocket. Tr. Vol. II at 127. Officers then searched the room and found "brand new items that had been purchased." *Id.* at 129. They also found receipts "that totaled over a couple thousand dollars." *Id.* Officers transported Gudger to the Kokomo Police Department. Once there, officers read Gudger his *Miranda* rights, and Gudger gave a statement in which he confessed to having robbed the bank.

[13] The State charged Gudger with one count of robbery, as a Level 3 felony. On January 23, 2018, Gudger filed a motion to suppress any evidence seized during

the search of his residence. In that motion, he asserted that the affidavit for probable cause that Detective Banush had filed in support of his request for the search warrant was based only on hearsay statements and that the affidavit did not contain any information to indicate that the hearsay statements were reliable or credible. Gudger further requested that the court suppress all items obtained from the search of his hotel room and his confession because the warrant to search the hotel and his arrest were "derivatively gained" from the warrant to search his house. Motion to Suppress at 11.[1] The trial court denied Gudger's motion.

[14] The trial court held a jury trial on January 23 through 25. During the trial, the State moved to admit as evidence photographs of the clothing that officers had found in Gudger's home as well as photographs of items found in the hotel room. The trial court admitted that evidence over Gudger's objection. The State also moved to admit as evidence the transcript of Gudger's interview with police, which the court admitted over Gudger's objection. Further, the State presented the testimony of Canady and another bank teller, Kelly Stephenson, who both identified Gudger as the man who had robbed the bank. The jury found Gudger guilty of robbery, as a Level 3 felony. The trial court entered judgment of conviction and sentenced Gudger to fifteen years in the Department of Correction. This appeal ensued.

---

[1] Gudger provided a copy of the motion to suppress in his appendix, but that copy is illegible. *See* Appellant's App. Vol. II at 74-84. Accordingly, we have taken judicial notice of the motion to suppress that Gudger filed in the trial court, which we have obtained via the Odyssey case management system.

# Discussion and Decision

[15] Gudger contends that the trial court erred when it admitted as evidence items law enforcement officers had seized during the search of his residence.[2] Gudger's argument that the search of his residence violated his constitutional rights raises "questions of law that we review *de novo*." *Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017) (quotation marks omitted), *trans. denied*.

[16] On appeal, Gudger contends that the search of his residence was illegal because the search warrant lacked probable cause. Specifically, Gudger asserts that the search was improper because the affidavit for probable cause contained only hearsay statements and because the affidavit did not contain any information to "indicate[] any corroboration" of those statements. Appellant's Br. at 8.

[17] But we need not decide whether there was probable cause to issue the search warrant. Even if we assume for the sake of argument that Gudger is correct and there was no probable cause to support the search warrant, "[t]he lack of probable cause does not automatically require the suppression of evidence obtained during a search conducted pursuant to a warrant." *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009). Indeed, "the exclusionary rule does not

---

[2] Throughout his brief on appeal, Gudger asserts that the trial court erred when it denied his motion to suppress. However, because Gudger appeals after a completed trial, "the question of whether the trial court erred in denying his motion to suppress is no longer viable." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objection good faith." *Id*.

[18] Accordingly, to prove that the trial court committed reversible error when it admitted as evidence items officers has seized from his residence, Gudger must demonstrate *both* that the warrant lacked probable cause *and* that the good faith exception does not apply. But, on appeal, Gudger only asserts that the search warrant lacked probable cause. He makes no argument that the good faith exception does not apply.

[19] It is well settled that there are two situations where the good faith exception does not apply. *See id*. Those include situations where "the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" or situations where "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. (quotation marks omitted).

[20] Gudger has not directed us to any evidence in the record, or made any argument, that the magistrate was misled by information in the affidavit that Detective Banush knew or should have known was false. Neither does he assert that the warrant was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonably. Accordingly, Gudger has not met his burden on appeal to demonstrate that the trial court erred when it admitted

as evidence items seized pursuant to the search of his residence.[3]  We therefore affirm the trial court.

[21]  Affirmed.


Robb, J., concurs.

Baker, J., concurs with separate opinion.

---

[3] Gudger also asserts, without more, that, "[b]ecause there was no probable cause to search 720 South Purdum, there was no legally obtained information to arrest Gudger and search the hotel where Gudger and Harris were staying." Appellant's Br. at 9. While it appears as though Gudger attempts to assert that the search of his hotel room and his statement to police should be suppressed as fruit of poisonous tree, Gudger does not cite any authority for his proposition or provide any argument to support his conclusory statement that his confession and the items from the hotel room should be suppressed. Accordingly, Gudger has failed to make cogent argument, and that purported issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a). In any event, given that Grudger not has met his burden to show reversible error in the seizure of evidence under the first warrant, his derivative argument under the fruit-of-the-poisonous-tree doctrine also fails on the merits.

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William T. Gudger, *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-525 |
| v. | |
| State of Indiana, *Appellee-Plaintiff* | |

**Baker, Judge, concurring.**

[22]    I fully concur in the majority opinion.  I write separately to note that in my view, there was probable cause to issue the search warrant.  It is true that the probable cause affidavit was primarily based on hearsay.  But I find it significant that after receiving the call from Kristen, Detective Banush investigated and was able to verify some of her assertions, including the hotel in which Gudger was staying, his room number, and his home address.  I believe that this follow-up investigation and confirmation of some of the salient details provided by Kristen shows that the information she had provided was sufficiently reliable to establish probable cause for the warrant.