Vaughn HANNIBAL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A02–0306–CR–520.

Court of Appeals of Indiana.

March 3, 2004.

Brent R. Dechert, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Vaughn Hannibal ("Hannibal") was charged with Class C felony assisting a criminal,[1] Class D felony obstruction of justice,[2] Class A misdemeanor possession of marijuana,[3] and Class A misdemeanor resisting law enforcement[4] in Howard Superior Court. Hannibal moved to suppress evidence seized during his arrest, and the trial court denied his motion. Hannibal appeals, presenting the following restated issues for review:

I. Whether the police exceeded the scope of their protective sweep when they discovered marijuana pursuant to Hannibal's arrest; and

II. Whether the "plain view doctrine" permitted the police to seize marijuana discovered during a protective sweep.

Concluding the marijuana at issue was discovered pursuant to a proper protective sweep and the plain view doctrine permitted the police to seize the marijuana, we affirm.

## Facts and Procedural History

On September 12, 2002, the Kokomo Police Department received a tip that Hannibal and LaJonta Hall ("Hall") were staying in apartment 703 of the Timber Nest apartment complex. At this time, there was a drug-related arrest warrant issued for Hannibal and a Class A felony arrest warrant issued for Hall. Kokomo Police officers had been looking for Hall for several months and were aware that Hannibal had been investigated for handgun-related offenses and Hall had been in incidents involving firearms, resisting law enforcement, and serious bodily injury. Tr. pp. 12, 19–20.

Upon arriving at apartment 703, two officers knocked on the front door of the apartment, and two officers went to the rear of the apartment. While the officers were waiting for a response, Detective Ronald Brown ("Detective Brown") noticed the apartment's window blinds move and heard the sound of running. Tr. pp. 4–5. Detective Brown believed the sound was indicative of someone running up stairs. Tr. p. 5.

After Detective Brown informed his fellow officers of what he had heard and knocked a second time, Hannibal's two-year-old son answered the door. Detective Brown then saw Hannibal run to the door, say "wait a minute," and shut the door on Detective Brown. Detective Brown was able to force his way into the apartment and placed Hannibal under arrest. The officers then arrested Hall and took Hall, Hannibal, and Hannibal's child outside of the apartment.

---

1. Ind.Code § 35–44–3–2 (1998).

2. Ind.Code § 35–44–3–4(a)(3) (1998).

3. Ind.Code § 35–48–4–11(1) (1998).

4. Ind.Code § 35–44–3–3(a)(1) (1998).

After the arrest, the officers felt they were unable to leave the front of the apartment because they had to make arrangements for Hannibal's child. Tr. p. 11. Because of the officers' knowledge of Hall's Class A felony arrest warrant, Hannibal and Hall's criminal history, and the concern that an unknown third party might have run upstairs, the officers were uncomfortable standing with their backs to the apartment. Tr. p. 13. Accordingly, the officers decided to perform a protective sweep of the apartment.

Detective Brown searched the upstairs of the apartment. While searching, he went into the apartment's bathroom, noticed the water to the toilet was running, glanced down, and—through the open lid—saw a plastic baggy containing green plant-like material. Tr. p. 10. After securing the remainder of the apartment, Detective Brown returned to the bathroom and retrieved the material from the toilet.

On September 18, 2002, Hannibal was charged by information with Class C felony assisting a criminal, Class D felony obstruction of justice, Class A misdemeanor possession of marijuana, and Class A misdemeanor resisting law enforcement. Hannibal moved to suppress the marijuana found during the protective sweep, and the trial court denied Hannibal's motion. On May 16, 2003, Hannibal requested certification for interlocutory appeal. The trial court certified its order, and this appeal now follows.

## I. Standard of Review

Our review of a denial of a motion to suppress is similar to a sufficiency review. *Edwards v. State*, 759 N.E.2d 626, 630

(Ind.2001). The record must disclose substantial evidence of probative value supporting the trial court's decision. *Id.* We do not reweigh evidence, and we consider conflicting evidence most favorably to the ruling. *Id.*

## II. Protective Sweeps

 There are two situations in which a warrantless search of a home during an arrest is constitutionally permissible. A warrantless search is proper when (1) it is conducted in rooms immediately adjoining the area of the arrest, regardless of reasonable suspicion, or (2) when the police have reasonable suspicion that rooms not immediately adjacent to the area of the arrest contain a hidden person who might jeopardize officer safety. *State v. Estep*, 753 N.E.2d 22, 26 (Ind.App.2001). Reasonable suspicion is satisfied if the known facts are such that a person of reasonable caution would believe the action taken was appropriate and is judged on a case-by-case basis against an objective standard. *Crabtree v. State*, 762 N.E.2d 241, 246 (Ind.Ct.App.2002).[5]

In the case at bar, the officers had reasonable suspicion to believe their safety was threatened by the possible presence of an individual on the second floor. The officers' knowledge of Hall and Hannibal gave them good reason to believe the two might be—or associate with those who are—disposed to safety-threatening activity. The officers were aware they were serving a Class A felony arrest warrant and of Hall and Hannibal's criminal history. The officers also had reason to believe someone may have been on the second

5. Hannibal claims the Fourth Amendment of the Constitution and Article I, Section 11 of the Indiana Constitution were violated by the protective sweep. Br. of Appellant at 5. Because Hannibal presents no authority or independent analysis supporting a separate standard under the Indiana Constitution, any constitutional claim based thereon is waived. *Bradshaw v. State*, 759 N.E.2d 271, 273 n. 2 (Ind.Ct.App.2001) (citing *Lockett v. State*, 747 N.E.2d 539, 541 (Ind.2001)).

floor, as Detective Brown heard what he thought was someone running up stairs.[6]

Hannibal contends the officers only stayed in front of the apartment to look after Hannibal's two-year-old child until the child's grandfather was able to pick him up and the "Indiana Supreme Court has not recognized a taking care of infants' exception to the warrant requirement." However, the officers' actions of not exposing a two-year-old child to any more of his father's arrest than necessary or the "adult" environment of a police station were both reasonable and prudent for Fourth Amendment purposes.

Finally, the fact the officers were outside of the apartment did not negate the need for a protective sweep under the facts and circumstances of this case. "Officers may be at as much risk while in the area immediately outside the arrestee's dwelling as they are within it. A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another." *United States v. Burrows*, 48 F.3d 1011, 1016 (7th Cir.1995), *cert. denied* (citing *United States v. Hoyos*, 892 F.2d 1387, 1397 (9th Cir.1989), *cert. denied*).

Under these facts and circumstances, the officer's protective sweep did not violate the Fourth Amendment.

### III. Warrantless Seizure and the Plain View Doctrine

■ Hannibal contends that, even if the protective sweep was proper, the officers were not allowed to seize the marijuana without a warrant. The State claims the

marijuana's seizure was proper pursuant to the "plain view doctrine."

■ To justify a warrantless seizure under the plain view doctrine, a law enforcement officer (1) must not have violated the Fourth Amendment in arriving at the place where items are in plain view, (2) the incriminating nature of the objects in plain view must be immediately apparent, and (3) the officer must have a lawful right to access the items in plain view. *Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind.1999) (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). Hannibal admits that the State satisfies the first two elements but contends the officers did not have a lawful right to access the marijuana without a warrant. Br. of Appellant at 11.

■ Exigent circumstances will give an officer a lawful right to access an item in plain view.[7] *Horton*, 496 U.S. at 137, 110 S.Ct. 2301. The possibility that evidence will be destroyed before the officers can obtain a warrant is a valid exigent circumstance. *Ware v. State*, 782 N.E.2d 478, 481 (Ind.Ct.App.2003). As the State aptly notes, "the fact that [the marijuana] was floating in a toilet bowl, readily capable of being flushed into oblivion, provided the exigency needed." Br. of Appellee at 8. As previously discussed, the toilet was filling at the time Detective Brown found the marijuana, which suggests someone had already attempted to dispose of the marijuana in such a manner. This possible destruction of the marijuana allowed the sweeping officer to seize it pursuant to the plain view doctrine.

6. The fact that the toilet on the second floor had marijuana in it and was still running when Officer Brown swept the bathroom corroborates Detective Brown's claim that he heard someone run up the stairs.

7. However, we do *not* hold that exigent circumstances "must" have existed to render the search at bar constitutional. *See Middleton*, 714 N.E.2d at 1101 n. 2 (noting its facts were distinguishable from other cases where courts upheld a "subsequent" seizure of evidence).

## Conclusion

The marijuana found by Detective Brown was discovered pursuant to a proper protective sweep, and its seizure was proper under the plain view doctrine.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.