

FILED

Mar 22 2018, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carl T. Wilson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 22, 2018<br><br>Court of Appeals Case No.<br>49A04-1706-CR-1201<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese Flowers, Judge<br><br>Trial Court Cause No.<br>49G20-1609-F2-35293 |

**May, Judge.**

[1] Carl T. Wilson brings an interlocutory appeal of the pretrial denial of his motion to suppress evidence. Wilson argues the evidence should have been suppressed because the search occurred after police officers arrested him without probable cause. We reverse.

# Facts and Procedural History

[2] On September 6, 2016, a resident of a duplex made a 911 call complaining of a car parked in the yard on the unoccupied side of the duplex.[1] She indicated the car may be gray and she did not recognize it. Her son had approached the car, but the occupants did not respond when he knocked on the window.

[3] Indianapolis Metropolitan Police Department Officers Joshua Stayton and Jeremy Miller responded to the 911 call. Officer Stayton had patrolled the area for "roughly three years," (Tr. at 5), and knew the area was known for prostitution and drugs. Officer Stayton described the area as "a high crime area." (*Id.*) Officer Stayton located a "brownish, grayish color" car in an apartment complex parking lot located on the same block as the 911 caller's residence. (*Id.* at 16.) Shining a spotlight into the car, Officer Stayton saw two people inside the vehicle. Officer Miller arrived soon thereafter.

[4] As the officers approached the car, Officer Stayton recognized the passenger as someone with a history of "prostitution and drug use." (*Id.* at 7.) A man, later identified as Wilson, exited the car but immediately bent back into it and reached toward the center console. Because of his knowledge of crime in the area and Wilson's movements inside the vehicle, Officer Stayton drew his weapon and ordered Wilson to show his hands. Wilson complied. When asked if he was hiding anything, Wilson replied, "[T]here is nothing in the

---

[1] The report was not anonymous as the caller provided her name and address.

vehicle, and [officers] could search the vehicle." (*Id*. at 9.) The officers patted Wilson down and handcuffed him "for [officer] safety." (*Id*.)

[5] After handcuffing Wilson, the officers asked Wilson "[a]t least twice" if they could search the vehicle and he said they could. (*Id*. at 15.) The officers took Wilson "maybe twenty feet" away from the car after he was handcuffed. (*Id*. at 34.) The officers did not give Wilson *Pirtle*[2] or *Miranda*[3] advisements. The officers also removed Wilson's passenger from the car and handcuffed her. Then they took turns searching the vehicle. Officer Stayton did not find anything in the car but found "a bag of marijuana . . . located towards the rear driver side tire, approximately two feet away from the vehicle." (*Id.* at 11.) Officer Miller searched the car "to make sure that the first officer don't - - doesn't miss anything[.]" (*Id*. at 27.) After popping open a loose part of the center console, Officer Miller found "a bag of something" which he believed to be drugs. (*Id*. at 25.) Officer Stayton retrieved the bag and found it contained heroin and methamphetamine.

---

[2] *Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975) (requiring persons in police custody be told of their right to a lawyer before their consent to a search is valid).

[3] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (requiring citizens taken into custody be told that they have a right to remain silent, that anything they say can be used against them in court, that they have a right to the presence of a lawyer, and that a lawyer will be appointed for them if they cannot afford one), *reh'g denied*.

[6]     The State charged Wilson with Level 2 felony dealing in a narcotic drug,[4] Level 3 felony possession of a narcotic drug,[5] Level 2 felony dealing in methamphetamine,[6] and Level 3 felony possession of methamphetamine.[7] On January 22, 2017, Wilson filed a motion to suppress the evidence of the drugs retrieved during the search.[8] Wilson alleged the officers' actions violated his state and federal constitutional rights to be free of illegal search and seizure. After a hearing and subsequent briefing, on March 28, 2017, the trial court denied Wilson's motion without findings of fact or conclusions of law.

# Discussion and Decision

[7]     Our standard of review for the denial of a motion to suppress evidence is similar to that of other sufficiency issues. *Jackson v. State,* 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), *reh'g denied, trans. denied.* We determine whether there is substantial evidence of probative value to support denial of the motion. *Id.* We do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Id.* However, the review of a denial of a motion to suppress is different from other sufficiency matters in that we must

---

[4] Ind. Code § 35-48-4-1 (2016).

[5] Ind. Code § 35-48-4-6 (2014).

[6] Ind. Code § 35-48-4-1.1 (2016).

[7] Ind. Code § 35-48-4-6.1 (2014).

[8] Wilson was not charged with a crime based on the bag of marijuana allegedly found outside the car.

also consider uncontested evidence that is favorable to the defendant. *Id.* We review *de novo* a ruling on the constitutionality of a search or seizure. *Campos v. State,* 885 N.E.2d 590, 596 (Ind. 2008).

[8] Wilson asserts his Fourth Amendment right to be free of illegal search and seizure was violated when the officers "detained [him] without reasonable suspicion, and arrested him without probable cause when they handcuffed him at gunpoint."[9] (Appellant's Br. at 13.) He asserts the trial court abused its discretion when it denied his motion to suppress the evidence obtained in the search. The State counters Wilson was not under arrest as the officers were merely acting to protect themselves due to Wilson's behavior on exiting his vehicle.

[9] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause. To deter State actors from violating that prohibition, evidence obtained in violation of the Fourth Amendment generally is not admissible in a prosecution of the citizen whose right was violated. *Clark v. State,* 994 N.E.2d 252, 260 (Ind. 2013). The State has the burden of

---

[9] Wilson also claims the search violated Article 1, Section 11 of the Indiana Constitution. However, as we hold his Fourth Amendment rights were violated, we need not address that argument. *See Reinhart v. State*, 930 N.E.2d 42, 45 n.1 (Ind. Ct. App. 2010) (when case reversed on Fourth Amendment grounds, no state constitutional analysis required).

demonstrating the admissibility of evidence collected during a seizure or search. *Id.*

[10] An officer may stop and briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion of criminal activity, even if the officer lacks probable cause to make an arrest. *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009) (*citing Terry v. Ohio*, 392 U.S. 1 (1968)). "Reasonable suspicion is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). An officer conducting an investigatory stop may "take reasonable steps to ensure his own safety." *Id*. at 46. However, an investigatory stop may be converted to an arrest depending on the totality of the circumstances. *Id*.

[11] An "arrest" is "the taking of a person into custody, that he may be held to answer for a crime." Ind. Code § 35-33-1-5. Our Indiana Supreme Court has said: "An arrest occurs when a police officer interrupts the freedom of the accused and restricts his liberty of movement." *Sears v. State,* 668 N.E.2d 662, 667 (Ind. 1996). Circumstances that would lead a reasonable person to conclude they are not free to leave may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Overstreet v.*

*State*, 724 N.E.2d 661, 664 (Ind. Ct. App. 2000), *reh'g denied, trans. denied.* Police may arrest a suspect if they have probable cause to believe that person has committed a felony. *Sears*, 668 N.E.2d at 667. "Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question." *Id.*

[12] In *Payne v. State*, 854 N.E.2d 1199 (Ind. Ct. App. 2006), *trans. denied*, we reviewed the facts of two cases in which the use of handcuffs constituted an arrest[10] and two cases in which the use of handcuffs occurred during an investigatory stop,[11] *see id.* at 1204-05, and held the determination whether a citizen was arrested or subject to a *Terry* stop depended on the totality of the circumstances in each case. In *Payne*, we determined that because the officer had requested Payne's permission to handcuff him and the detention had lasted only five minutes, Payne had not been arrested and the encounter was merely an investigatory stop. *Id.* at 1205.

[13] In *Reinhart*, we reviewed the totality of circumstances when the officer ordered Reinhart from his car at gunpoint. *Reinhart*, 930 N.E.2d at 47. Reinhart calmly complied with all orders given. *Id.* With the laser sight of the officer's gun fixed on him, Reinhart was ordered to kneel and then lay down on the ground,

---

[10] *Loving v. State*, 647 N.E.2d 1123 (Ind. 1995), and *Wright v. State*, 766 N.E.2d 1223 (Ind. Ct. App. 2002).

[11] *Crabtree v. State*, 762 N.E.2d 241 (Ind. Ct. App. 2002), and *Johnson v. State*, 710 N.E.2d 925 (Ind. Ct. App. 1999).

which he did. *Id.* Reinhart had given no indication he was armed or dangerous. *Id.* We held a reasonable person would not have believed he was free to leave; thus, the officer's actions constituted an arrest. *Id.* at 48.

[14] The situation here is more analogous to *Reinhart*. Officers Stayton and Miller were responding to a dispatch regarding a suspicious vehicle in the backyard of the unoccupied portion of the caller's duplex home. The vehicle they eventually approached was not parked in the duplex yard but rather, in the parking lot of a nearby apartment complex. As Officer Stayton approached, Wilson exited the vehicle "and immediately turn[ed] around and ben[t] forward, and ma[de] a lot of movement toward, at the center console area of the vehicle." (Tr. at 22.) Officer Stayton drew his gun and ordered Wilson to show his hands. Wilson complied. The officers then handcuffed him. When asked if he had "anything inside of the vehicle of concern [:] guns, weapons, anything like that[,]" (*id.* at 9), Wilson said there was nothing in his car and the officers could search it.

[15] Without minimizing the officers' testimony that they observed Wilson lean into the car and they were concerned about a possible firearm or narcotics, such behavior is not enough, by itself, to support reasonable suspicion, let alone probable cause. *See Sanchez v. State*, 803 N.E.2d 215, 221 (Ind. Ct. App. 2004), *trans. denied.* What may have begun as an investigatory stop quickly transformed into an arrest. Wilson complied with all of the officers' orders. The officers approached Wilson at gunpoint and then handcuffed him. Wilson remained handcuffed and guarded by one or the other officer while two

searches of his vehicle were conducted. A reasonable person would not believe himself free to leave. *See Reinhart*, 930 N.E.2d at 47 (a reasonable person "would have considered his freedom of movement to have been restrained to the degree associated with a formal arrest").

[16] Under the facts presented, Officer Stayton's approach with a gun drawn and the subsequent handcuffing of Wilson was more than required to either confirm or dispel the officers' suspicion Wilson had been parked at the duplex. The officers' actions exceeded the scope of an investigatory stop and became an arrest without probable cause. As the arrest was without probable cause, the admission of evidence obtained from the search was in error.[12] *See Sanchez*, 803 N.E.2d at 221 ("fruit of the poisonous tree" doctrine bars illegally obtained evidence from admission).

# Conclusion

[17] We conclude Wilson was under arrest for the purposes of a Fourth Amendment search and seizure analysis because the officers drew their weapons and handcuffed Wilson, which restrained his freedom of movement. Therefore, because the officers lacked probable cause to arrest Wilson prior to their search

---

[12] The State argues the search was, nevertheless, valid because Wilson consented to the search. However, as Wilson argues, his consent could not have been valid because he was under arrest and was not given the warning required by *Pirtle*. *See Pirtle v. State*, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975) (requiring person in police custody be told of their right to a lawyer before their consent to a search is valid).

of his vehicle and seizure of the drugs, the trial court abused its discretion when it denied Wilson's motion to suppress evidence.

[18]    Reversed.


Vaidik, C.J., and Altice, J., concur.