## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 25 2020, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer Hinkebein Culotta
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Saylor,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 25, 2020<br><br>Court of Appeals Case No.<br>20A-CR-759<br><br>Appeal from the Washington<br>Superior Court<br><br>The Honorable Frank Newkirk, Jr.<br><br>Trial Court Cause No.<br>88D01-1708-F2-567 |

**Tavitas, Judge.**

# Case Summary

[1] Kenneth Saylor brings this interlocutory appeal from the denial of his motion to suppress evidence. We affirm.

# Issues

[2] Saylor raises two issues on appeal, which we restate as follows:

> I. Whether the trial court properly denied Saylor's motion to suppress evidence.
>
> II. Whether the trial court erred in finding that contraband was found in plain view during the protective sweep.

# Facts

[3] On August 24, 2017, law enforcement officers from various agencies were briefed before serving a Harrison County "high risk" felony arrest warrant upon Saylor at his residence in Washington County.[1] Tr. Vol. II p. 8. Saylor faced a charge of dealing in methamphetamine and was suspected of manufacturing methamphetamine in the residence.

[4] At least one vehicle was parked outside Saylor's residence when the officers arrived. Trooper Kevin Bowling of the Indiana State Police knocked on Saylor's door. From outside the house, assisting officers saw Saylor walk

---

[1] Among the law enforcement officers involved in serving the arrest warrant were "Sheriff Roger Newlon, Pekin Town Marshall Jeff Thomas, Trooper Kevin Bowling, Trooper Jonathan Haugh, Trooper Dustan Rubenacker and Deputy Alan Taylor of Washington County Sheriff Department." Saylor's App. Vol. II p. 10.

toward the front of the residence and heard Saylor shout that he was coming to the door. Saylor answered the door, exited the residence, and was arrested. Trooper Bowling escorted Saylor to the front lawn of the home.

[5] Troopers Brett Walters and Dustan Rubenacker then entered the house and conducted a protective sweep of "the first room[ ] on [the] right hand side where Saylor kept . . . snakes" and "the main living room" and found no other persons in Saylor's residence. *Id*. at 9. During the protective sweep of the two rooms, Trooper Walters saw, in plain view: (1) two digital scales in the main living room; and (2) a glass smoking pipe with burnt residue on a shelf in the "snake room." After the protective sweep, the officers allowed Saylor back into the house. Saylor asked to retrieve a pair of shoes before he was transported to jail. Trooper Walters asked Saylor if anything in the residence posed a threat to the law enforcement officers. Saylor responded that he only had smoking pipes and digital scales in the house. Trooper Walters asked Saylor for the location of the items, and Saylor replied that the smoking pipes were in a container under the shelf that held Saylor's snakes and the digital scales were in a room located off the kitchen. Trooper Walters asked if Saylor would consent to a search of the residence; Saylor refused.

[6] That same day, Detective Mike Bennett of the Indiana State Police applied for a search warrant and, in support, filed an affidavit that provided in part:

> Officer Brett Walters . . . conducted a protective sweep of [ ]
> Saylor's residence incident to arrest. During said protective
> sweep, Officer Walters observed in plain view a glass pipe with

burnt residue located in the first room on the right after entering said residence. This room contained [ ] Saylor's collection of snakes. Officer Walters also observed in plain view two (2) sets of black digital scales in the main living room.

Saylor's App. Vol. II p. 110. The trial court issued the search warrant, and the ensuing search of Saylor's residence yielded: (1) nearly 2.8 ounces of crystal methamphetamine; (2) two glass pipes; and (3) two digital scales.

[7] On August 25, 2017, Trooper Walters filed an "Affidavit for Probable Cause for Warrantless Arrest" that provided in part:

> Trooper Rubenacker and I entered the residence to clear it for officer safety. Once the residence was clear, we brought [Saylor] back in the residence. I informed [Saylor] of the warrant and asked him if there was anything in the house that could hurt any of the officers. I had information that [Saylor] might have been cooking methamphetamine somewhere in the residence. [Saylor] told me the only thing in his house where [sic] some glass smoking pipes and scales. I asked him where they were and he told me the pipes where [sic] in a gray container in his snake room, the scales were in another room by the kitchen. I asked [Saylor] if he would give us written consent to search the residence he told me "No". I informed him that I would be petitioning the court for a search warrant for his residence.

Exhibits Vol. III p. 4.

[8] On August 30, 2017, the State charged Saylor with dealing in methamphetamine, a Level 2 felony; possession with intent to deliver, a Level 3 felony; maintaining a common nuisance, a Level 6 felony; and possession of paraphernalia, a Class C misdemeanor. Saylor filed a motion to suppress

evidence on September 9, 2019, wherein he argued that: after Saylor was arrested, "a police officer, without lawful authority and/or Mr. Saylor's consent, entered Mr. Saylor's residence in order to search his residence"; and "[f]ollowing the unlawful entrance and search of Mr. Saylor's residence, Det. Mike Bennett then sought a search warrant for Mr. Saylor's residence." Saylor's App. Vol. II p. 62. Saylor argued further:

> [5]a) At the time the police officers entered Mr. Saylor's home, the police officer did not have a Search Warrant nor justification for a warrantless entry and, thus, violated the Fourth Amendment to the United States Constitution.
>
> b) The police officers failed to advise Mr. Saylor, who was in custody, of his right to consult with counsel, before searching and thus violated his Article 1, Section 11 right to be free from unreasonable searches and Section 13 right to counsel. [ ].
>
> c) Mr. Saylor did not consent to [the] search and thus, the resulting search violated the Fourth Amendment of the United States Constitution and the Indiana Constitution.

*Id*. at 62-63.

[9] On November 21, 2019, the trial court conducted a hearing on Saylor's motion to suppress evidence. On direct examination, Trooper Walters testified that: (1) "[he] believe[d] there w[ere] two vehicles" parked outside Saylor's house when the officers arrived to serve the arrest warrant, tr. vol. II p. 8; (2) during the protective sweep, he observed a glass smoking pipe and two digital scales in plain view, *id*. at 9, 10; and (3) "[a p]rotective sweep is just looking in open

areas that somebody can hide.  It's not opening up small little cupboards that people could not relatively fit in.  It's just making sure that there's nobody there and if there is, pull them out and just identify them[,]" *id*. at 8, 9.  Under cross-examination, defense counsel introduced Trooper Walter's probable cause affidavit into evidence, and the trial court admitted it into the suppression hearing record.  Trooper Walters admitted that, in his probable cause affidavit, he did not state that he observed contraband in plain view during the sweep.[2]

[10]  The trial court denied Saylor's motion to suppress on January 30, 2020.  The trial court's order provided in part:

> 12. At the Suppression Hearing, Trooper Walters testified that he executed a "protective sweep" of Mr. Saylor's house and that "on any arrest warrant that we do we always do a protective sweep.  No matter how small or how big the warrant is."  His affidavit explained what a protective sweep is: "Trooper Rubenacker and I entered the residence to clear it for officer safety."  He indicated the sweep was also an effort to identify everybody in the residence for protection.  He testified to these specific or articulable facts concerning danger to officers in this case:
>
> > a. Defendant was wanted for a felony crime;

---

[2] Trooper Walters' probable cause affidavit provides that, after the protective sweep was completed: (1) Trooper Walters asked Saylor whether any items in the residence posed a threat to the officers; (2) Saylor replied he only had smoking pipes and digital scales in the residence; and (3) Trooper Walters asked Saylor the location of the contraband, which Saylor disclosed.  In Saylor's motion to suppress, Saylor alleged that Trooper Walters actually learned the location of the contraband from Saylor after the protective sweep was complete.  Saylor maintains that the probable cause affidavit, thus, contradicts Trooper Walters' suppression hearing testimony that the pipes and digital scales were found in plain view.

b. They had information that meth[amphetamine] might be cooking in the residence;

c. There were multiple vehicles outside the residence.

d. Officers were provided information that it was a high risk warrant and that methamphetamine dealing was occurring at the residence.

e. His clandestine lab certification was the reason he was attached to the team executing the arrest warrant.

13. Trooper Walters testified that a protective sweep of the residence was performed and that in plain sight a glass smoking pipe with residue was observed and in a separate room two digital scales were in plain view.

14. Trooper Walters therefore articulated facts, which taken with the reasonable inferences from those facts would warrant an officer to believe a protective sweep was necessary and reasonable for officer safety.

15. For all of these reasons, drug paraphernalia and evidence associated with the dealing of controlled substances which were seen in plain view and in multiple locations helped establish probable cause for the search warrant and items and evidence which was seized will not be suppressed.

Saylor's App. Vol. II pp. 118-19. On February 27, 2020, Saylor filed a motion to certify the order for interlocutory appeal, which the trial court granted. This Court accepted jurisdiction over Saylor's interlocutory appeal on April 22, 2020 pursuant to Indiana Appellate Rule 14(B).

# Analysis

[11] Saylor argues that the trial court erred in denying his motion to suppress evidence. Specifically, Saylor argues that "[t]he evidence seized . . . was obtained . . . as a result of a warrantless illegal protective sweep and the seized evidence was not found in plain view"; and that the search warrant, "based on the allegation that items were found in plain view, was obtained in violation of the Fourth Amendment to the United States Constitution."[3] Saylor's Br. p. 12.

[12] Our standard of review for the denial of a motion to suppress evidence is similar to that of other sufficiency issues. *Wilson v. State*, 96 N.E.3d 655, 658 (Ind. Ct. App. 2018), *trans. denied*. We determine whether there is substantial evidence of probative value to support the denial of the motion. *Id.* We do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Id.* However, the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Id.* We review *de novo* a ruling on the constitutionality of a search or seizure. *Id.*

---

[3] Although Saylor asserts a claim under Article 1, Section 11 of the Indiana Constitution, he fails to present argument thereon in his brief; thus, this claim is waived. *See Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002) ("Because Abel presents no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived."); *see* Ind. Appellate Rule 46(A).

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause. U.S. Const. amend. IV. "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Durstock v. State*, 113 N.E.3d 1272, 1277 (Ind. Ct. App. 2018). This protection has been "extended to the states through the Fourteenth Amendment." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception." *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013).

## I.     *Protective Sweep*

We first address Saylor's contention that the trial court erred in finding that the protective sweep of Saylor's residence was justified. Regarding protective sweeps, this Court has held:

> [a] warrantless search is proper when (1) it is conducted in rooms immediately adjoining the area of the arrest, regardless of reasonable suspicion, or (2) when the police have reasonable suspicion that rooms not immediately adjacent to the area of the arrest contain a hidden person who might jeopardize officer safety. *State v. Estep*, 753 N.E.2d 22, 26 (Ind. [Ct.] App. 2001). Reasonable suspicion is satisfied if the known facts are such that a person of reasonable caution would believe the action taken was appropriate and is judged on a case-by-case basis against an objective standard.

*Hannibal v. State*, 804 N.E.2d 206, 209 (Ind. Ct. App. 2004); *see Maryland v. Buie*, 494 U.S. 325, 334-35, 110 S. Ct. 1093 (1990) (citation omitted).

[15] An officer's given reasons to justify a protective sweep may not be "mere inchoate and unparticularized suspicion[s] or hunch[es]," but should constitute "specific and articulable facts." *Estep*, 753 N.E.2d at 27.

> [S]uch a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Id.* at 26 (quoting *Buie*, 494 U.S. at 334-35).

[16] In *Weddle v. State*, 989 N.E.2d 371 (Ind. Ct. App. 2013), the police went to Weddle's home to serve an arrest warrant. Weddle and Hall were suspected of manufacturing and dealing methamphetamine. Two cars were parked outside the home. When the officers knocked, they saw the blinds move and heard movement in the home. The officers entered the home and arrested Weddle in a front room; however, they heard movement at the back of the home and suspected another person was present. Weddle, however, was evasive when asked if anyone else was in the home. The officers conducted a protective sweep, smelled an odor associated with the manufacture of methamphetamine, and saw a marijuana plant in plain view. The officers also found a woman, who was wanted on an arrest warrant, hiding in the back room. The officers

then ended the protective sweep. After Weddle refused to consent to search of the home, the officers obtained a search warrant. The ensuing search revealed a methamphetamine laboratory and contraband. Weddle was charged with related offenses and moved unsuccessfully to suppress the seized evidence.

[17] On appeal, this Court affirmed the denial of the motion to suppress and found: (1) "the protective sweep [ ] was justified because the police officers searched only adjoining rooms from which an attack could immediately occur"; and (2) "the officers had specific articulable facts that an individual, who could jeopardize their safety, was hiding in the [ ] house." *Weddle*, 989 N.E.2d at 377.

[18] The record here reveals that this matter arose from the service of a high-risk felony warrant on Saylor, whom the officers believed was dealing and manufacturing methamphetamine. Trooper Bowling recalled that two vehicles were parked outside Saylor's residence. After the officers arrested Saylor outside the house, the officers entered the residence to conduct a protective sweep. Under the circumstances, the officers were authorized to conduct a limited protective sweep of areas immediately adjoining the front of the house.

[19] Inasmuch as Saylor challenges the protective sweep of his residence because he was arrested outside, we are not persuaded. As this Court opined in *Hannibal*:

> [t]he fact the officers were outside of the apartment did not negate the need for a protective sweep . . . . Officers may be at as much risk while in the area immediately outside an arrestee's dwelling [as] they are within it. A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another.

*Hannibal*, 803 N.E.2d at 209 (citations omitted). Moreover, we find that the officers' protective sweep was justified because the presence of another vehicle outside gave the troopers reason to suspect that another person was in the residence. The protective sweep was both brief and limited in its scope. Trooper Walters testified that the protective sweep took mere "moments," and it appears that the officers only swept rooms immediately adjoining[4] the front of the house from which an attack could immediately occur. *See* Tr. Vol. II pp. 9, 17 (Trooper Walters' testimony specified that the officers swept "the first room[ ] on [the] right hand side where Saylor kept . . . snakes" and "the main living room").

[20] Based on the foregoing, there is substantial evidence of probative value to support the denial of the motion to suppress regarding the officers' entry to conduct the protective sweep. *See Weddle*, 989 N.E.2d at 377 (finding "the protective sweep [ ] was justified because the police officers searched only adjoining rooms from which an attack could immediately occur"; and "the officers had specific articulable facts that an individual, who could jeopardize their safety, was hiding in the back of the house").

---

[4] We do not have a floor plan for Saylor's home in the record; however, we assume that the "snake room" and the main living room were immediately adjoining the front of the house where Saylor was arrested because Saylor does not assert otherwise.

## II. *Plain View*

[21] Saylor also argues that "[u]ncontested evidence . . . established . . . that the pipes and scales were not in plain view during the protective sweep." Saylor's Br. p. 25. A well-recognized exception to the Fourth Amendment's warrant requirement is the exception for evidence found in plain view. *McAnalley v. State*, 134 N.E.3d 488, 500-01 (Ind. Ct. App. 2019), *trans. denied,* 141 N.E.3d 33 (Ind. 2020) ("The plain view doctrine is recognized as an exception to the search warrant requirement."); *see* 16 WILLIAM ANDREW KERR, INDIANA PRACTICE § 2.2(f)(3) at 177 (1991). "To justify a warrantless seizure under the plain view doctrine, a law enforcement officer (1) must not have violated the Fourth Amendment in arriving at the place where the items are in plain view, (2) the incriminating nature of the objects in plain view must be immediately apparent, and (3) the officer must have a lawful right to access the items in plain view." *Hannibal*, 804 N.E.2d at 210.

[22] The record reveals that, at the suppression hearing, Trooper Walters testified he observed a glass smoking pipe and two digital scales in plain view during the protective sweep of Saylor's residence. We have found *supra* that the officers were authorized to enter Saylor's residence and did not violate the Fourth Amendment when they conducted the protective sweep. Saylor does not

dispute the immediately apparent incriminating[5] nature of the glass pipe and digital scales that Trooper Walters observed during the protective sweep. Nor is there any dispute regarding whether the troopers had a lawful right to access the items observed in plain view.[6]

[23] Saylor alleges that Trooper Walters' suppression hearing testimony and his "Affidavit for Probable Cause for Warrantless Arrest" conflict. Our standard of review requires that we consider conflicting evidence in the light most favorable to the trial court's ruling. *See Wilson*, 96 N.E.3d at 658. Accordingly, this claim is unavailing. Saylor's argument is an invitation to reweigh the evidence, which we cannot do.

## Conclusion

[24] Substantial evidence supports the denial of Saylor's motion to suppress. We affirm.

[25] Affirmed.

Kirsch, J., and Pyle, J., concur.

---

[5] *See Granger v. State*, 946 N.E.2d 1209, 1214 (Ind. Ct. App. 2011) ("The 'immediately apparent' prong of the plain view doctrine requires that law enforcement officials have probable cause to believe the evidence will prove useful in solving a crime.")

[6] S*ee Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind. 1999) (quoting *Texas v. Brown*, 460 U.S. 730, 103 S. Ct. 1535 (1983) ("if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately")).